ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020-1182
(212) 278-1000

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PARK ELECTROCHEMICAL CORP. and
NELTEC, INC.,

                         Plaintiffs,

v.

CONTINENTAL CASUALTY COMPANY,

                         Defendant.

Civil No. 04-CV-4916

# PLAINTIFFS' RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

NYDOCS1-834693.2

Plaintiffs Park Electrochemical Corp. and its wholly-owned subsidiary, Neltec, Inc. ("Neltec"), by and through its undersigned counsel, submits this statement pursuant to Local Rule 56.1, in support of its Motion for Partial Summary Judgment.

Plaintiffs contend that there is no issue to be tried with respect to the following material facts:

### Neltec's Operations

1. Neltec sells finished materials to customers in the electronics industry who manufacture multilayer printed circuit boards and interconnection systems. One line of materials is the N6000, which Neltec manufactured using another material, called "prepreg," developed specifically for that line and manufactured by Nelco, a wholly-owned subsidiary of Park. Nelco manufactured this prepreg in a specially-modified treater, one of four it operated. Farrell Aff., Exh. B.

2. An explosion occurred in Nelco's treater on November 27, 2002, resulting in the deaths of two employees, and the total destruction of the treater and eliminating Neltec's only source of prepreg for the manufacture of its N6000 line of materials. Farrell Aff. at Exh. B, Exh. C.

3. Neltec's customers' products are specifically designed and constructed to use the N6000 line of materials, and cannot use alternate Neltec

materials without costly and time-consuming product and production process design changes. Farrell Aff., Exh. B.

4. Neltec made a claim for insurance coverage for this loss of income under the CNA Policy and CNA breached the CNA Policy by refusing to pay for Neltec's loss caused by the interruption of its supply of prepreg and its consequent total inability to manufacture its N6000 line of materials. Farrell Aff. Exh. D, F.

5. The CNA Policy, number RMP210728811, with a policy period of May 30, 2002 through May 30, 2003, is an "all risk" policy, insuring against "all risks of direct physical loss of or damage to property and/or interests described herein." CNA Policy (Farrell Aff., Exh. E) at 16. The CNA Policy provides "Contingent Business Interruption (Gross Earnings)" coverage for "Named Locations" with a sublimit of $10,000,000 and for "Unnamed Locations" with a sublimit of $2,500,000. Farrell Aff., Exh. E at 2.

6. The CNA Policy attaches a Schedule of Locations, which lists the Neltec location which manufactured the N6000 materials using a component part — prepreg — supplied by Nelco. Farrell Aff., Exh. E at Schedule of Locations and Limits. The Contingent Business Interruption provision thus covers loss at Locations occupied by the insured and covered by the policy: the Location here was that of Neltec, in Tempe, Arizona.

7. The Contingent Business Interruption provision in the CNA Policy reads as follows:

> Subject to the sublimit specified in Section I.4. of this policy, the Company will pay for loss resulting from necessary interruption of business conducted at **_Locations_** occupied by the Insured and covered in this policy, caused by direct physical damage or destruction to:
>
> a. any real or personal property of direct suppliers which wholly or partially prevents the delivery of materials to the Insured or to others for the account of the Insured; or
>
> b. any real or personal property of direct customers to whom the Insured's product(s) is shipped, which wholly or partially prevents the acceptance of said product(s).

Farrell Aff. Exh. E at 18.

8. "Direct suppliers" is not defined in the policy. "Location" is defined to be "[t]he legal premises." Farrell Aff. Exh. E at Amended Glossary Endorsement.

9. The CNA Policy includes a "Territorial Limits" condition, which provides that "[t]he coverage territory is The United States of America, including its territories and possessions, and Canada." Farrell Aff. Exh. E at 7. Again, the Neltec Location is in Arizona, and, thus, loss at that Location is "covered by the policy."

10. Neltec gave notice to CNA as soon as it became aware of its loss of business income at the Tempe, Arizona Location, requesting that CNA pay for that loss under the Contingent Business Interruption provision of the CNA Policy. *See* Notice letter, dated March 12, 2003 Farrell Aff., Exh. F.

11. A document in CNA's files discussing coverage for this loss makes clear that CNA understood that the Location of the loss was Tempe,

Arizona — *not* Singapore, the location of the physical damage to the Dependent Property — and questioned the application of the Territorial Limitation to this claim:

> Loss Local[e] [sic]: Actual loss is in Singapore. Contingent loss arises from Tempe, AZ location....
>
> * * *
>
> Singapore is not within the specified territorial limit. Of concern as well is that the language for Contingent BINT does not specify a territorial limitation for "...direct suppliers, which wholly or partially prevents the delivery of materials to the insured". Does General Conditions-Territorial Limits apply overall? The actual loss occurred outside territorial Limits. The Contingent loss is occurring within Territorial Limits.

Farrell Aff., Exh. G.

12. Two months later, CNA's claims adjuster, Greg Hunger, discussing the interaction of the Territorial Limitation and the Contingent Business Income coverage, stated to another CNA employee that "I would like to discuss the ramifications of these sections of the policy with you prior to proceeding," and further wrote that "[i]f a covered loss has occurred here, I would hire an accountant to assist me on the net profit, continuing and non continuing expenses." Farrell Aff., Exh. H.

13. CNA began circulating internal drafts of a reservation of rights. The earliest draft reservation of rights letter asserts that there was no coverage because there was no damage to Neltec's equipment:

> There was no direct damage to any Park Electrochemical property in Tempe, Arizona. Similarly, there was no stoppage due to a covered loss from outside suppliers. Columbia Casualty Company

accordingly reserves rights as to whether the factors of this claim would lead it to be covered under the Contingent Business Interruption coverage.

Farrell Aff., Exh. I.

14. CNA's own claims handling guidelines emphasize that reservations of rights must be sent on a timely basis. Farrell Aff., Exh. J.

15. On September 23, 2003, CNA eventually sent a reservation of rights letter which identified two potential defenses to coverage:

> (1) "[T]he Nelco Products Pte., Ltd. facility, which is located in Singapore, is outside of the coverage territory specified in the policy."
>
> (2) "Nelco Products Pte., Ltd. <u>may not</u> be a 'direct supplier' within the meaning of the Contingent Business Interruption coverage of the policy. The intent of the policy is not to provide Contingent Business Interruption coverage for losses resulting from such interdependencies."

Farrell Aff., Exh. K.

16. Thereafter, the consultants hired by CNA variously computed Park's loss at $1,436,993 (Farrell Aff., Exh. L) and $1,179,871 (Farrell Aff., Exh. M)

17. Despite this, and without sharing either of these documents with Park, CNA then took the position that "[p]er the reservation of rights letter, the incident does not appear to be covered," and "[t]he results of the accounting review do not show a financial loss has occurred." Farrell Aff., Exh. N.

18. In its Answer and Affirmative Defenses, Farrell Aff., Exh.A, CNA asserted the following defenses:

> (1) **Explosion Exclusion:** The Policy does not insured against loss or damage caused by or resulting from "explosion." Answer and Affirmative Defenses, at 7 (referencing Exclusion B(3)(d): "Unless otherwise provided for and limited in Clause 4 of Section I, Declarations, this Policy does not insure against loss or damage caused by or resulting from the following; *however, if loss or damage from a peril not excluded herein ensues, then this policy shall cover only for such ensuing loss or damage:* ...Id. Explosion, rupture, or bursting of fired or unfired pressure vessels or pipes, steam boilers, steam pipes, steam turbines, steam engines, or flywheels, owned or operated by the Insured.")
>
> (2) **Exclusions in the Boiler & Machinery Coverage:** The loss is excluded by the following exclusions under the Boiler & Machinery Form: Answer and Affirmative Defenses, at 7-8 (referencing Exclusion BM6 c(2) ("Notwithstanding any provisions to the contrary, the Company assumes no liability under this Coverage Part for any loss: ... from the explosion of accumulated gases or unconsumed fuel within the fire box, or combustion chamber, or any fired vessel or within the flues which conduct the gases of combustion therefrom"); and Exclusion BM6 c(4) ("Notwithstanding any provisions to the contrary, the Company assumes no liability under this Coverage Part for any loss: ... from explosion of an **Object** other than: (i) any steam boiler, steam piping, steam turbine, gas turbine, steam engine, or (ii) any

machine or electrical apparatus when such loss is caused by centrifugal force or mechanical breakdown")).

(3) **Design Defect Exclusion:** The loss is excluded by the Design Defect Exclusion. Answer and Affirmative Defenses, at 9 (referencing Exclusion B(3)(a): "Unless otherwise provided for and limited in Clause 4 of Section I, Declarations, this Policy does not insure against loss or damage caused by or resulting from the following; *however, if loss or damage from a peril not excluded herein ensues, then this policy shall cover only for such ensuing loss or damage:* ... Errors or defects in design or specification, errors in processing or manufacture, faulty workmanship or faulty materials.")

(4) **Direct Suppliers:** Under the Contingent Business Interruption coverage, "[t]he damage in question was not to property of a direct supplier of Park."

(5) **Territorial Limits:** Citing the Territorial Limits ("[t]he coverage territory is The United States of America, including its territories and possessions, and Canada," CNA argued that "[t]he damage to the treater occurred in Singapore and not within the territorial limits covered by the Policy," "[t]herefore, no coverage for the loss is afforded under the Policy." Answer and Affirmative Defenses, at 9-10.

(6) **Notice:** "Park did not give timely notice of the loss," "[t]herefore, no coverage for the loss is afforded under the Policy." Answer and Affirmative Defenses, at 10.

19. CNA subsequently withdrew its defenses based upon the Explosion Exclusion and the Boiler and Machinery Exclusion. Farrell Aff., Exh. O.

Dated: September 8, 2006
(corrected as of October 24, 2006)

ANDERSON KILL & OLICK, P.C.

_____
Richard P. Lewis (RL-2227)
1251 Avenue of the Americas
New York, NY 10020-1182
(212) 278-1000