ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020-1182
(212) 278-1000

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

PARK ELECTROCHEMICAL CORP. and
NELTEC, INC.,

                Plaintiffs,

v.

CONTINENTAL CASUALTY COMPANY,

                Defendant.

Civil No. 04-CV-4916

---

**PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

# Table of Contents

                                                                          Page

Table of Contents ................................................................................................... i

Table of Authorities ............................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT .......................................................................................................... 2

I.     CNA FAILS TO EXPLAIN HOW THE LANGUAGE OF THE "COVERAGE TERRITORY" PROVISION SUPPORTS ITS ARGUMENT ................................ 2

II.    BECAUSE THE SINGAPORE SUPPLIER HAD ITS OWN INSURANCE, PARK'S CLAIM DOES NOT INVOLVE "INTERDEPENDENCY" ISSUES .......... 5

CONCLUSION ...................................................................................................... 9

# Table of Authorities

|  | Page |
|---|---|
| **CASES** | |
| British Int'l Ins. Co. v. Seguros La Republica, S.A., 342 F.3d 78 (2d Cir. 2003) | 8 |
| Garrett v. Ohlsen, 282 A.D.2d 807, 722 N.Y.S.2d 432 (3d Dep't 2001) | 3 |
| Great N. Ins. Co. v. Dayco Corp., 637 F. Supp. 765 (S.D.N.Y. 1986) | 5 |
| Hendries, Inc. v. American Express Co., 35 A.D.2d 412, 316 N.Y.S.2d 554 (1st Dep't 1970), *appeal dismissed*, 29 N.Y.2d 546, 272 N.E.2d 581, 324 N.Y.S.2d 92 (1971) | 3 |
| J. Manes Co., Inc. v. Greenwood Mills, Inc., 53 N.Y.2d 759, 421 N.E.2d 840, 439 N.Y.S.2d 348 (1981) | 3 |
| McClellan v. Pa. R.R. Co., 62 F.2d 61 (2d Cir. 1932) | 9 |
| National Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Cos., Inc., 265 F.3d 97 (2d Cir. 2001) | 5 |
| SR Intern. Business Ins. Co. v. World Trade Ctr. Props., ---F.3d--- 2006 WL 2961100 (2d Cir. Oct. 18, 2006) | 8 |
| Walls v. Bailey, 49 N.Y. 464 (1872) | 8 |
| Winegrad v. New York Univ. Med. Ctr, 64 N.Y.2d 851, 476 N.E.2d 642, 487 N.Y.S.2d 316 (1985) | 3 |
| Yafa Jewelry Inc. v. All Those Underwriters Subscribing to Policy of Ins. Numbered 96FA0026180A, 42 F. Supp. 2d 307 (S.D.N.Y. 1999) | 5 |
| **MISCELLANEOUS** | |
| 12 Richard A. Lord, *Williston on Contracts*, § 34:19 | 8 |

Plaintiffs Park Electrochemical Corp. ("Park") and its wholly-owned subsidiary, Neltec, Inc. ("Neltec"), respectfully submit this Memorandum of Law in Further Support of Their Motion for Summary Judgment ("Park's Reply").

## PRELIMINARY STATEMENT

The strident tone of CNA[1]'s Opposition[2] cannot mask the fact that CNA ignores the basic contentions of Park's Motion for Summary Judgment – that when read ***as written by CNA***, the CNA Policy plainly provides insurance coverage for Park's contingent business interruption claim and that, under well-established New York law, it is improper to consider evidence outside the four corners of the CNA Policy to alter the plain meaning of the language that CNA drafted. CNA's Opposition largely relies on the conclusory testimony of its own underwriter and claim manager as to what the CNA Policy means. This self-serving testimony, unsupported by any authority, is powerless to demonstrate a meeting of the minds between Park and CNA sufficient to supercede the plain language of the CNA Policy. As such, this "evidence" clearly is insufficient to warrant a denial of Park's motion for partial summary judgment.

The fundamental weakness of CNA's position is its insistence that this dispute is about whether or not Park is entitled to insurance coverage for "interdependency." As discussed in detail below, the specific claim at issue simply does not involve the type of "interdependency" contemplated by any of the parties or in any "custom and practice" in the industry. As CNA itself explains in its Opposition, the hallmarks of a contingent business interruption claim are that the "supplier . . . bears the

---

[1] Defendant Continental Casualty Company.

[2] Continental Casualty Company's Opposition To Park's Motion for Summary Judgment, dated October 6, 2006.

risk of any physical damage," and "does not have a contractual relationship with the [insurance company]" providing the contingent business interruption coverage. Park's claim fits squarely within this description provided by CNA. The supplier— Nelco— bore the risk of, and has separate insurance coverage for, the physical damage in Singapore, and Nelco has no contractual relationship with CNA. Thus, by CNA's *own definition*, Park's claim is a contingent business interruption claim. Similarly, the alleged industry "custom and practice" that CNA presses on the Court is based not only on different policy language than is at issue here, but also generally involves an entirely different factual scenario, and thus cannot be relied upon. In any case, as discussed in prior briefing, at most, evidence of custom and practice does nothing more than raise issues of fact precluding summary judgment in CNA's favor.

## ARGUMENT

### I. CNA FAILS TO EXPLAIN HOW THE LANGUAGE OF THE "COVERAGE TERRITORY" PROVISION SUPPORTS ITS ARGUMENT

CNA admits by moving for summary judgment that the "Coverage Territory" language is unambiguous. That should be the end of the inquiry with respect to this defense under New York law – unambiguous policy language must be given its plain and ordinary meaning. Park already has unequivocally demonstrated that the plain and ordinary meaning of the Coverage Territory provision is that Park may only seek insurance *coverage* for *losses* suffered in the United States and Canada. Because here Park seeks insurance coverage only for its loss of business income incurred in the United States, and seeks no coverage for any losses in Singapore – whether of business income or for damaged property — the Coverage Territory provision simply is irrelevant.

CNA fails to point to specific language in the CNA Policy even remotely suggesting a requirement for Contingent Business Income insurance that the "physical damage" which gives rise to a domestic business income loss must take place in the Coverage Territory, or that the "supplier" must be located in the Coverage Territory. Instead, CNA simply presents conclusory assertions of its own underwriter and claims-handler as to the meaning of "Coverage Territory." These blatantly self-serving contentions are unaccompanied by evidence, explanation or authority of any kind. Further, these allegations are belied by the policy language itself. Such conclusory assertions simply are insufficient to overcome the unambiguous, explicit CNA Policy language, and cannot form the basis either to grant summary judgment to CNA or to deny summary judgment to Park. *Garrett v. Ohlsen*, 282 A.D.2d 807, 808, 722 N.Y.S.2d 432 (3d Dep't 2001) (holding that self-serving, conclusory assertions are insufficient to support a motion for summary judgment); *Winegrad v. New York Univ. Med. Ctr*, 64 N.Y.2d 851, 853, 476 N.E.2d 642, 644, 487 N.Y.S.2d 316, 318 (1985) (holding that bare conclusory assertions do not establish entitlement to summary judgment); *J. Manes Co., Inc. v. Greenwood Mills, Inc.*, 53 N.Y.2d 759, 761, 421 N.E.2d 840, 439 N.Y.S.2d 348 (1981) (summary judgment denied where there was no evidentiary material in the record to support plaintiff's allegations and conclusory assertions); *Hendries, Inc. v. American Express Co.*, 35 A.D.2d 412, 415, 316 N.Y.S.2d 554, 557 (1st Dep't 1970), *appeal dismissed*, 29 N.Y.2d 546, 272 N.E.2d 581, 324 N.Y.S.2d 92 (1971) (holding that bold conclusory assertions, even if believable, are not enough to support a motion for summary judgment).

Further, as Park clearly has stated throughout briefing on this issue, it does not dispute that the "Coverage Territory" of the CNA Policy is the United States and Canada. Contrary to CNA's mischaracterizations, Park does not seek to "broaden" the scope of the insurance coverage Park purchased, or to eliminate the Coverage Territory limitation in the CNA Policy. CNA's Opposition at II.B. Rather, Park asserts that the "Coverage Territory" provision simply is irrelevant, on its face, to Park's claim for Contingent Business Interruption insurance because Park only seeks insurance coverage for its loss of business income that took place in Arizona, clearly within the Coverage Territory of the Policy.

CNA also takes issue with Park's position that CNA easily could have written the CNA Policy to impose a requirement for Contingent Business Income insurance that physical damage to the property of a "supplier" has to take place within the Coverage Territory. CNA does not dispute that it could have drafted the policy language more clearly. Rather, CNA asserts that "[CNA] is bound by the terms of the Policy as written" as if CNA had no control over the language included in the insurance policy it drafted and sold. CNA's Opposition at II.B. But in fact CNA chose which language to include in the CNA Policy, and is rightfully bound thereby.

CNA further complains that Park "saying that the unambiguous policy language could have been written differently seems rather inconsistent and shows that Park will say anything to wiggle away from the Policy it sought and was issued." CNA's Opposition at II.B. CNA misses the point entirely. Park fails to see how the two propositions – (1) that the insurance policy CNA drafted unambiguously provides insurance coverage for Park's claim, and (2) that CNA could have used different

language to give it a different meaning and to exclude Park's claim – are inconsistent. Because the CNA Policy is unambiguous, in order for the CNA Policy to mean what CNA now says it means, CNA would have to have *drafted it differently*. Park merely demonstrated how CNA *could have drafted* the CNA Policy to accomplish the result CNA now seeks. The fact that the Policy could have been written clearly to limit the scope of coverage in the way that CNA urges on the Court does not negate the fact that the policy, as written, is unambiguous.

Indeed, as noted in Park's Opening Brief, courts routinely reject insurance company arguments regarding policy interpretation when a policy easily could have been drafted to make clear the insurance company's position. *See, e.g., Yafa Jewelry Inc. v. All Those Underwriters Subscribing to Policy of Ins. Numbered 96FA0026180A*, 42 F. Supp. 2d 307, 312 (S.D.N.Y. 1999) (holding that "[i]f that is the choice that defendants intended to impose on plaintiff through the Policy, they could have drafted the Policy to make that unmistakably clear"); *Great N. Ins. Co. v. Dayco Corp.*, 637 F. Supp. 765, 780 (S.D.N.Y. 1986) (holding that "[i]f Great Northern had intended to exclude a loss where an employee's dishonest act was only a contributing factor, it could have drafted the exclusion to cover this situation."); *National Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Cos., Inc.*, 265 F.3d 97, 105 (2d Cir. 2001) (holding that, "[h]ad the parties wished to achieve the result now urged by National Union, they could have drafted" the policy explicitly to do so).

## II. BECAUSE THE SINGAPORE SUPPLIER HAD ITS OWN INSURANCE, PARK'S CLAIM DOES NOT INVOLVE "INTERDEPENDENCY" ISSUES

Although CNA agrees with Park that the CNA Policy language is unambiguous, CNA urges the Court to consider extrinsic evidence — not even of the

intent of the parties — to vary the plain meaning of that policy language. CNA fails even to address the extensive recitation of New York law in Park's briefing, which clearly states the rule that unambiguous policy language must be interpreted based upon the language within the four corners of the policy, without consideration of extrinsic evidence. Rather, CNA objects that "Park wants to place blinders on the Court" by asking the Court "to consider only the words on the paper and not the big picture" with respect to the scope of coverage for contingent business income under the CNA Policy. CNA's Opposition at II.C. In fact, Park merely asks the Court to apply well-settled, black letter New York law which *requires* courts to interpret insurance policy language based upon "the words on the paper" and nothing more. Consideration of extrinsic evidence – CNA's so-called "big picture" — to vary or contradict unambiguous insurance policy language simply is not permitted under New York law. Park Opp. at 9-13. Of course, as is typical, CNA cites to *no law* or any other authority to support its argument that the Court go beyond the "words on the paper" in interpreting the concededly unambiguous policy language it drafted. *Id.*

CNA again asks the Court to consider the self-serving testimony of its own underwriter, James Butridge, that the CNA Policy requires that the "supplier" must be a non-owned entity in order to get insurance coverage. CNA Opp. at II.C. The fact that Mr. Butridge made his conclusory assertion "over and over again" does not give it any more weight than it deserves. As discussed above, at 3, this type of "evidence," without more, simply is not sufficient to support a motion for summary judgment.

CNA argues throughout its briefing that Park's contingent business interruption claim is not covered because the ownership relationship between Park and

Nelco means that the claim is not really one for "contingent" business interruption, and coverage for this claim would require specific "interdependency" coverage. CNA disproves its own argument, however, asserting in its brief that the "distinguishing characteristic" of contingent business interruption insurance is that the "risk of insured physical damage rests with the insured's suppliers **who have no contractual relationship with the insurer.**" CNA Opposition at II.C. (emphasis added). Astonishingly, CNA goes on, in the same paragraph, to acknowledge that Nelco **does not have** a contractual relationship with CNA. *Id.* Indeed, CNA's entire argument with respect to the "Coverage Territory" provision rests on its position that Nelco is not an insured entity under the CNA Policy. Thus, unlike the scenarios discussed in CNA's briefing, and in any of the purported "evidence" of industry custom and practice, CNA has never borne any "risk of insured physical damage" with respect to Nelco's (the supplier's) property. As CNA has admitted, Nelco had its own insurance coverage for the Singapore facility, which provided insurance for the physical damage to the treater located in Singapore. This puts to rest CNA's argument that this dispute rests on whether Park had "interdependency" coverage. **Park's claim is not an "interdependency" claim.** Accordingly, Park's claim for contingent business income coverage falls squarely within the parameters outlined by CNA in its Opposition.

CNA finally resorts to an argument that it would be "unfair" to hold it to the unambiguous CNA Policy language, which does not require that a "supplier" be a non-owned entity. CNA's Opp. at II.C. The Court should reject this argument on at least two grounds: First, as Park unequivocally demonstrated in its prior briefing, CNA could have drafted the CNA Policy to exclude coverage for contingent business income where

the loss of business income was caused by physical damage to a "non-owned supplier." It did not do so. It thus is entirely "fair" to hold CNA to the language it drafted. Moreover, as discussed, on the particular facts present here, there is no unfairness in providing coverage for Park's contingent business income loss. The supplier, Nelco, had separate, independent insurance coverage for the Singapore operation, that separately covered the physical damage loss in Singapore. Because Nelco was independently covered by its own insurance policy, CNA bore no more risk for covering Neltec's contingent business interruption losses related to this entity then it would have for any other non-owned entity.

Finally, if the Court decides to consider CNA's purported evidence of "custom and usage in the industry," *at most*, this raises a question of fact precluding summary judgment in CNA's favor: "Whether a usage exists is a question of fact, to be determined by the trier of fact." *SR Intern. Business Ins. Co. v. World Trade Ctr. Props.*, --- F.3d ---, 2006 WL 2961100 (2d Cir. Oct. 18, 2006), quoting 12 Richard A. Lord, *Williston on Contracts*, § 34:19 (4th ed. & Supp. 2005) and citing *Walls v. Bailey*, 49 N.Y. 464, 476 (1872) (holding that "not only existence of such usage, but whether knowledge of its exists in any particular case, is a question of fact for the jury"). The burden of proving a trade usage is on the party benefiting from its existence (here, CNA), *British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 342 F.3d 78, 83 (2d Cir. 2003), and the "evidence of a custom and usage can be insufficient to warrant submission of the question to the jury." *WTC*, 2006 WL 2961100 at *22. Evidence of custom and usage will be submitted to a jury *only* if there is "substantial evidence to show that what is called custom amounts to a definite, uniform, and known practice under certain, definite,

and uniform circumstances." *Id.* at *22 n.8, quoting *McClellan v. Pa. R.R. Co.*, 62 F.2d 61, 63 (2d Cir. 1932). Testimony by the insurance company's own underwriter and claims-handler is hardly "substantial evidence" of a "definite, uniform, and known practice" inconsistent with the policy language drafted by that same insurance company. Moreover, because Nelco had its own insurance for the physical damage that took place in Singapore, the claim at issue here does not fit within any "certain, definite [or] uniform circumstances" covered by any of the alleged "trade custom" discussed in CNA's briefing.

## CONCLUSION

For all of the foregoing reasons, this Court should deny CNA's Motion for Summary Judgment, and grant Plaintiffs' Motion for Partial Summary Judgment.

Dated: October 23, 2006

ANDERSON KILL & OLICK, P.C.

*Richard P. Lewis*
Richard P. Lewis (RL-2227)
1251 Avenue of the Americas
New York, NY 10020-1182
(212) 278-1000

Attorneys for Plaintiffs Park Electrochemical
Corp. and Neltec, Inc.
